**Smith v. Smith**

*Robert E. Benion,* for petitioner.
*H. William Koch,* for respondent.

KREHEL, *P.J.,* May 18, 1981—We are dealing here with a petition filed pursuant to the Protection From Abuse Act of October 7, 1976, P.L. 1090, 35 P.S. § 10181 et seq., as amended, which became effective the 1st of February, 1977. The act did away with "peace bonds" issued by Aldermen and Justices of the Peace prior to the Unified Judicial System of Pa. Const., Art. V.

Our county has pioneered a policy to implement this act, aided by counsel from Susquehanna Legal Services who initiated the majority of cases in 1977 and thereafter.

This hearing judge has handled more than 130 cases in the past four years and has assisted in fashioning the sensitive policy of issuing ex parte orders dealing with respondents' personal and property rights. Review of the caseload over the years, with 20/20 hindsight, reveals the accuracy in signing the preliminary order in 87.6 percent of such petitions, with one fatality for failure of counsel to include confiscation of the weapons of one respondent in such preliminary order.

Careful review of the petition in the instant case, the answer filed at side bar prior to hearing on May 15, 1981, and this hearing judge's notes of testimony distilled a prefatory paragraph, prior to findings of fact, discussion, conclusions, and an order.

This hearing judge points out that counsel for the parties helped to ignite the May 4 incident referred to in the pleadings, and testified to at hearing, in that both lawyers knew the combustible and vol-

atile natures of their clients, yet allowed the confrontation, the rubbing of these two sticks together, if you please, by directing respondent to get the income tax return and other joint business records at the common domicile, rather than have counsel for petitioner provide this paperwork.

"Who went up the stairway first?" is offered by respondent's counsel in closing argument in referring to the May 4 physical encounter as the key question in sustaining or denying this petition. But this court offers a corollary prior question: "Who should know better than having the parties meet at the staircase?"

From the demeanor of the parties, while offering testimony at the hearing of May 15, some conclusions about the credibility of petitioner and respondent became clearly evident to this hearing judge. Petitioner's superior airs, her haughty manner, and her wanting *her day* and *her say* in court to the point of voluntarily stating the contents of two letter-cards from a paramour, "I love you, Ken," after a marriage of 18 years, sprayed the atmosphere with salt, intending to reach respondent publicly. It was a brazen display that clouded her intentions in filing this petition.

So much for prefatory outlining. From the pleadings and testimony, this hearing judge determines the following.

## FINDINGS OF FACT

1. Petitioner, Anne M. Smith, is an adult individual residing at R.D. #2, Box 237, Milton, Northumberland County, Pa., the common domicile of the parties prior to respondent's withdrawal in August, 1980.

2. Respondent, John D. Smith, III, is an adult

individual residing at the Allenwood Motel, Allenwood, Union County, Pa. and working as a part-time bartender pending the conclusion of the divorce proceedings initiated in September, 1980.

3. The petition for protection from abuse, filed May 6, 1981 alleged "serious bodily injury" to petitioner on May 4, 1981, which "has placed her in imminent fear of serious bodily injury to herself," with further allegations (Paragraph 6-F) that respondent "had previously threatened" her on April 3, 1981, "stating he would beat her with a pick handle and that she might never recover from the beating."

4. The parties are birth-parents of four children: Brad, born June 18, 1963; Kimberly, born May 15, 1965; Kristen, born April 26, 1969; and Kelly, born August 20, 1972; Brad and Kristen offered testimony at hearing of May 15, 1981.

5. Prior to the domestic turbulence of August, 1980, the parties operated a joint enterprise of raising farm animals, and testimony was allowed concerning an alleged incident of August, 1980, which went beyond the scope of the petition. As of the time of this hearing, the animals have been sold, master's hearing in divorce has been held on May 13, 1981, and counsel for respondent has pointed out the need for work around the barn to maintain and preserve this asset of joint property.

6. Petitioner's testimony regarding the alleged incident of May 4, 1981, about 5:30 p.m. at the common domicile, R.D. #2, Milton, related respondent's demand for income tax return, his alleged grabbing her from behind as she ascended the staircase to the once-common bedroom, respondent's alleged hold on her demonstratively as a "half-Nelson," causing alleged bruises on her right arm.

7. Petitioner further testified that respondent locked himself in the once-common bedroom, and proceeded to search the dresser and closet for the file folder containing the income tax return and the joint business records used to accomplish this return; that their son, Brad (age 17), punched the top panel out of the bedroom door at her direction to gain entrance into the bedroom; that she grabbed a bag of greeting cards held by respondent because two were particularly personal; and that respondent pushed her at the top landing of the stairs before departing from the common domicile with the file folder.

8. On cross-examination, petitioner admitted that she tried to get the file folder from respondent in the once-common bedroom, by grabbing him; that the two greeting cards were from one Ken Snyder in February and April of 1981, signed "I love you, Ken"; that she had been touched in August, 1980, and threatened in April, 1981.

9. Her further testimony related to "mouth battles" which led respondent to leave voluntarily in 1980; that the alleged incident of August, 1980, was at the barn when respondent was upset that the cattle had not been fed. She alleged that he dropped a bucket and struck her on the back with a short-handed brush. The contradictory testimony of respondent later in the hearing was that she "swung the bucket" at him.

10. Reference to the alleged threat of April 3, 1981, revealed her testimony to be that he had nothing in his hand when the words "pick handle" were uttered, but that she was "upset and scared" knowing his temper. His contradictory testimony stated that if he had wanted "to do her in, then he would not have pushed her away with the brush when she swung the bucket." His admitted remarks were to

the effect, "Lady, if I wanted to do you in, I'd use a pick handle." Further testimony of petitioner stated that she repeated her version of "the threat" to her children, amplified it again in front of the children and respondent, and embroidered her version as if she wished for it to happen.

11. The 17-year-old son, Brad, testified with calm, level-headed responses, differing in part with both birth-parents about the alleged incident of May 4. He had reacted to his birth-mother's direction to try to get his birth-father out of the bedroom, did not see any instance of his birth-father pressing his birth-mother to the floor, and did not appreciate having his birth-father coming to the common domicile where any incident might occur.

12. The 12-year-old daughter, Kristen, testified that she heard "the threat" about the "pick handle" from her birth-mother, and when it was repeated by the birth-mother in front of the other children and her birth-father.

13. The common domicile and the barn, with outbuildings, at R.D. #2, Milton, is the joint property of the parties until resolved through the economic provisions of the divorce proceedings.

## DISCUSSION AND CONCLUSIONS

The Protection from Abuse Act of October 7, 1976, P.L. 1090, 35 P.S. § 10182, defines "abuse" as the "occurrence of one or more of the following acts between family or household members who reside together: "(i) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury or serious bodily injury with or without a deadly weapon. (ii) Placing by physical menace another in fear of imminent serious bodily injury."

The purpose of this act was to provide temporary and emergency relief from *intentional, knowing,* or *reckless* attempts to injure one family member by another family member. (Emphasis supplied.) We note that the "act" and the "threat" were initiated, or interpreted, by petitioner-wife, and they produced responses from the respondent-husband. The testimony of bruises and signs of injury in this instance are not alone sufficient to entitle this petitioner-wife to relief or protection under the law. See Tanker v. Tanker, 107 Montg. 144 (1980).

This act had a legitimate purpose when passed and still has effective application in situations where there is a truly abused and frightened spouse. But careful reading of the foregoing findings indicates that the instant case differs vastly. The petition filed here appears to be a tactical tool in this marital litigation, and the emergency relief sought cannot be utilized simply because tension exists when there is confrontation.

The avoidance of physical contact is the remedial answer. Under the Divorce Code of April 2, 1980, P.L. 63, 23 P.S. § 1017 et seq., this court has broad equity power to award temporary exclusive possession of the marital home to one of the parties. That has occurred voluntarily, and this is not the divorce proceeding. Some equitable discretion is available to this hearing judge. The barn and outbuildings need attention, and this court will allow the respondent-husband to do such work, provided that no confrontations take place. Counsel are placed on notice to monitor their respective clients, and, as officers of this court, are expected to maintain the peace until the divorce proceedings conclude the relationships.

We enter, therefore, the following

## ORDER

And now, May 18, 1981, after due consideration of the within petition and answer, and after hearing held and testimony taken, the prayer of the petition is denied. Respondent is permitted to repair the barn and outbuildings, but is excluded from the common domicile, pending the conclusion of divorce proceedings. Counsel for the parties shall maintain vigilance to avoid physical confrontation of their clients.